IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYRONE HILLARD WELLS JR. #315886     *
          Plaintiff,
       v.                   *  CIVIL ACTION NO. RDB-05-753

CITY OF BALTIMORE              *
BALTIMORE CITY POLICE DEPARTMENT
POLICE OFFICER JAMES MCKINLEY    *
POLICE OFFICE PAUL WOJCIK
          Defendants.      *
                        ***

## MEMORANDUM OPINION

### I.  Procedural History

On March 17, 2005, Plaintiff, a former state inmate proceeding *pro se*, filed this Complaint seeking unspecified relief arising out of force used during the course of an April 5, 2002, police pursuit in Baltimore City.[1]  In his court-ordered supplemental Complaint for damages, Plaintiff claimed that: (i) he was forced off the road by two plainclothes police detectives in an unmarked police car; (ii) Baltimore City Police Department ("BCPD") Detective Ford drove aggressively and BCPD Detective McKinley shot at him repeatedly, hitting him once in the chest and causing him to become temporarily paralyzed and lose consciousness; (iii) his vehicle jumped the curb and crashed through a fence and into a shed; (iv) the crash  "knocked [him] into consciousness;" and (v) as he fled for his safety, he was tackled, kicked, and brutally beaten by the police while handcuffed. Plaintiff raises the following claims against all Defendants:

    (1)      He was subject to malicious and excessive force and gross negligence during the course of the automobile chase and his arrest;

---

[1]   Aside from specific allegations of "gross negligence" and "malicious use of force" raised against Defendant McKinley, Plaintiff made no concrete claims against the other named Defendants in his original Complaint.

(2)     His Fourth Amendment rights against illegal search and seizure were violated;

(3)     His rights were violated under Maryland's Declaration of Rights;

(4)     His Fourth Amendment rights were violated when officers acted without warrant and without probable cause; and

(5)     He was subject to false claims from police officers regarding justification for the use of force.[2]

On January 25, 2006, the Court granted the Motions to Dismiss filed by former Baltimore City Police Commissioner Edward Norris, former Mayor Martin O'Malley, and former City Solicitor Thurman Zollicoffer.  (Paper Nos. 37 & 38).  The Motions to Dismiss filed by Defendants City of Baltimore ("City") and BCPD were denied.  (*Id*.).  Accordingly, the only cause of action that remained were Plaintiff's excessive force claims against Defendants McKinley, the City and the BCPD.

After answers were filed by these parties a scheduling order was entered and the case bifurcated, so that the issue of liability against Defendant McKinley would be resolved first.  The municipal government claims raised against the City and BCPD were stayed pending Plaintiff and Defendant McKinley's discovery and motions practice. Plaintiff was subsequently permitted to amend his Complaint to include additional allegations against Defendants McKinley, the City, and the BCPD, and to add the name of Baltimore City Police Office Paul Wojcik as a defendant.[3]  (Paper

---

[2]     According to Plaintiff, he was charged with various offenses and entered an *Alford* plea to assault and a guilty plea to possession, for which he received a five-year sentence.  For these reasons, all claims inextricably connected to the validity of his convictions were dismissed without prejudice pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

[3]     Plaintiff's "First Amended Complaint" sought to add the names of five BCPD officers, alleging that: (i) Sgt. Dorsey McVicker made false statements of probable cause to arrest Plaintiff; (ii) Detective Brian Ford drove the unmarked police vehicle in a dangerous and reckless manner and his actions constituted a "seizure" of Plaintiff; (iii) Detective Paul Wojcik tackled and kicked Plaintiff as Plaintiff collapsed after being shot; and (iv) Detectives William Harris and Michael Gardner, both members of the "C.I.D. Fast Unit," participated

Nos. 48 & 53).  Defendants McKinley and Wojcik filed answers to the Amended Complaint and the scheduling orders were revised and extensions of time were granted on several occasions upon request of the parties.

## II.  __Pending Motions__

Currently pending before the Court are Plaintiff's Motion for Summary Judgment and Defendants' Wojcik and McKinley's Opposition and Cross-Motion for Summary Judgment.[4] (Paper Nos. 76 & 80).  The issues have been adequately briefed and no hearing is necessary.  *See* Local Rule 105.6. (D. Md. 2004).   For reasons to follow, Defendants' Motion shall be granted, Plaintiff's Motion shall be denied, the Complaint against Defendants the City and the BCPD shall be dismissed, and judgment shall be entered in favor of Defendants McKinley and Wojcik.

## III.  __Standard of Review__

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party

---

in the "illegal seizure" of Plaintiff.  Paper No. 48.  Plaintiff further claimed that he was shot by McKinley as a result of "deficient training by the BCPD and City...."  *Id.*  Plaintiff was not granted leave to amend his Complaint to add Officers McVicker, Ford, Harris, and Gardner as Defendants.  His claim for damages against those officers goes to the legality of his arrest or "seizure" and are precluded under the rule set out in *Heck.  See infra*, n. 2.

[4]    Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (1975), on May 31, 2007, the Clerk informed Plaintiff that Defendants had filed a dispositive motion, that Plaintiff had 17 days in which to file written opposition to the motion, and that if Plaintiff failed to respond, judgment could be entered against him without further notice.  *See* Paper No. 19.  On July 10, 2007, the notice was re-mailed to Plaintiff at his new address.  *See* Paper No. 20 & 21.  Plaintiff has chosen not to respond.

fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).   Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## IV.   <u>Analysis</u>

### Plaintiff's Claims against Officers McKinley and Wojcik

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989).  This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted).  Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396.  The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.*

In this Circuit the *Graham* legal standard was echoed in *Greenridgev v. Ruffin*, 927 F.2d 789, (4th Cir. 1991).  *Greenridge* adopted the *Graham* standard, noting that an officer's use of force must be judged from the perspective of the officer on the scene rather than 20/20 vision of hindsight, and that the calculation of reasonableness must make allowances for the fact that police officers are many times forced "to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Greenridge*

*v. Ruffin*, 927 F.2d at 791-92, *citing Graham v. Connor, supra*. This Circuit has further held that reasonableness is determined "based upon the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).

According to the unopposed verified affidavits of Defendants McKinley and Wojcik, on April 5, 2002, they were positioned in unmarked police cars in or near the 3400 block of Rogers Avenue to assist other police officers in a controlled drug transaction.   They had received radio information that suspected drug dealer Tyrone Wells, a Black male approximately in his late 20's, would be driving a green Honda Accord, model year 2000.

McKinley and Wojcik state that on that day Plaintiff was driving a green Honda Accord containing a substantial amount of crack cocaine in the back seat.  At about 5:45 p.m., Plaintiff drove the car onto the 3400 block of Rogers Avenue, heading east.  Both McKinley and Wojcik, positioned in different areas nearby, had received radio information that Plaintiff had aborted the planned drug transaction and was trying to escape by traveling east on Rogers Avenue.[5]

McKinley and Officer Brian Ford drove their unmarked police car west on Rogers Avenue to intercept Plaintiff and stop him for questioning.   They activated the light bar on the front dashboard signaling to Plaintiff that they were police officers.    When the police car blocked the path of Plaintiff's car, temporarily causing Plaintiff to stop his forward progress, McKinley got out of the passenger side of the police car, displaying his police badge on the front of his vest on his chest, and placing "his gun in the ready position" at his side.   In his unopposed verified affidavit

---

[5]     McKinley and Wojcik affirm that at that time of day the 3400 block of Rogers Avenue was teeming with vehicle and pedestrian traffic.

McKinley claims that Plaintiff then backed up, turned his car left in McKinley's directions, "revved" or accelerated his car, and proceeded to drive directly at the police officer.[6]

With Plaintiff driving at him, McKinley believed that Plaintiff was about to run him over and/or hurt nearby pedestrians with the car.   He fired five shots at Plaintiff in the center mass position in order to stop the immediate threat to his safety and/or the safety of the pedestrians.  One of the shots placed a hole in the front windshield of the car, with the trajectory of the bullet leading directly to the driver's seat of the vehicle and hitting Plaintiff in the left chest.  All other shots missed Plaintiff but damaged other parts of the car as Plaintiff drove past McKinley.

McKinley fired no additional shots at the moving car once it had passed him.  Plaintiff continued to drive the car over a curb onto a lawn off of Rogers Avenue, through a chain link fence, and into a shed in a homeowner's yard.   Despite his injury, Plaintiff got out of the car, refused to submit to police authority, and ran away from officers towards an alley.

Defendant Wojcik, positioned with another police officer in a separate location, had received information that Plaintiff was attempting to escape from police on foot.  He left his police vehicle and ran on foot in an attempt to catch plaintiff.   Wojcik intercepted Plaintiff about 100 feet from the shed where Plaintiff had crashed his car, grabbing Plaintiff about the torso in a bear-like hug, the momentum of which caused him to crash into a fence with Plaintiff and spin around.  Wojcik states that he used the force of the movement to take Plaintiff to the ground.  Plaintiff, on the ground face down, was placed in handcuffs.  During the course of his deposition, Plaintiff acknowledges that no one kicked him when he was caught and handcuffed.  Instead, he claims that he was "hit on

---

[6]    Plaintiff has continued to argue that he did not know that the individuals blocking the street were police officers.  In his deposition he acknowledged that he had cocaine in his car and that he turned his car in the direction of the police officer in order to escape allegedly "in fear for his life."   He does not, however, dispute that he drove his vehicle directly at the police officer

his side" and "hit on the back of his head," but was "blindsided" and cannot identify who allegedly struck him or whether those strikes were intentional or simply caused by the nature of how he was caught and   spun to the ground.[7]

In his summary judgment motion Plaintiff claims that the BCPD has been plagued by corruption, scandal, and rogue officers.   He complains that officers in the "Fast Unit" are aggressive, negligent, hasty, and intimidating.  Plaintiff further states that on the date in question McKinley had no information upon which to conclude that Plaintiff posed a danger to others and that the officers' use of force was excessive.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The grant of qualified immunity is provided so that government officials can perform their duties free from the specter of endless and debilitating lawsuits.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Determining whether a state officer is entitled to qualified immunity is a two-step inquiry.  First, a court must decide "whether a constitutional right would have been violated on the facts alleged."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *see also Miller v. Prince George's County, Maryland*, 475 F.3d 621, 626-27 (4th Cir. 2007).[8]

---

[7]     Defendants McKinley and Wojcik state that as evidenced by Plaintiff's deposition testimony, he has failed to come forward with any identity witnesses who can verify his allegations regarding Wojcik's actions.

[8]     The first prong of the test is readily discernible: plaintiff alleges that his right to be free from the excessive use of force was violated.  In determining the second prong -- whether that right was clearly established at the time of the arrest – the court must determine whether  "the contours of the right" are

The first prong of the test is readily discernible: plaintiff alleges that his right to be free from the excessive use of force was violated.  In determining the second prong -- whether that right was clearly established at the time of the arrest – the court must determine whether  "the contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. at 641.  The third prong of the qualified immunity analysis, reasonableness, is an objective standard.  *Id.* at  638.  The proper inquiry is whether a reasonable officer could have believed the application of force was  lawful. *Id.* at 641.

Plaintiff does not satisfy the first prong of this test.  Therefore, the qualified immunity need not be addressed.  The Court finds the conduct of the individual Defendants in the undisputed facts of the case to be reasonable under the circumstances.   BCPD officers, upon information that a drug deal was being conducted by Plaintiff and Plaintiff had a quantity of drugs in his car, had him under surveillance while he was driving a vehicle in a well-traveled pedestrian area in the Pimlico neighborhood of Northwest Baltimore.   McKinley had further information that Plaintiff was breaking off the transaction and attempting to escape.   McKinley's vehicle attempted to block Plaintiff's escape route and McKinley exited and stood outside his vehicle, wearing his badge, with weapon at the ready.   The siren light bar in the windshield of the police car had been activated.   According to McKinley, Plaintiff's car was temporarily stopped, but he backed up, revved his engine, and began driving his vehicle right in McKinley's direction.  Believing that Plaintiff was for all intent and purposes using his moving vehicle as a weapon which would place McKinley or other

---

"sufficiently clear that a reasonable official would understand that what he is doing violates that right."
*Anderson v. Creighton*, 483 U.S. at 641.  The third prong of the qualified immunity analysis, reasonableness, is an objective standard.  *Id*. at  638.  The proper inquiry is whether a reasonable officer could have believed the application of force was  lawful. *Id.* at 641.

innocent bystanders at risk or harm, McKinley shot five times in Plaintiff's direction, hitting Plaintiff once in the chest.   After Plaintiff passed McKinley's police vehicle with his car and McKinley determined that there was no longer a life-threatening situation to himself and other bystanders, he fired no further shots.   The Court finds that McKinley's split-second actions were reasonable under the circumstances at the time of the incident.   Plaintiff has failed to present any facts raising any genuine issue of material fact with respect to the reasonableness of McKinley's acts in using his weapon.

The Court further finds that Wojcik is also entitled to judgment in this matter.   Plaintiff complains that during the course of his arrest Wojcik tackled and kicked him.   Wojcik affirms that he was involved in the police drug operation, *albeit* in area separate from McKinley, and that he was provided information that Plaintiff had crashed his vehicle into a shed and was attempting to flee the area on foot.   He maintains that he chased Plaintiff, took him down with a bear hug, crashed with him into a fence, and helped secure his arrest, handcuffing him while he was on the ground. Plaintiff's own deposition testimony fails to rebut these asseverations.   Wojcik's use of force, applied to secure a fleeing drug suspect who had just driven his car at a police officer before plowing into a fence and shed and then taking off on foot, meets the prevailing reasonableness standard under *Graham*.[9]

**Plaintiff's Claims against City and BCPD**

Title 42 U.S.C. § 1983 authorizes a plaintiff to bring a suit for damages against any individual "whom under color of any statute, ordinance, regulation, custom, or usage, of any

---

[9]    The Court declines to exercise its pendent jurisdiction over any claims raised by Plaintiff under Maryland law.  *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

State....subjects, or causes to be subjected, any citizen of the United States or other person.....to the deprivation of any rights, privileges, or immunities secured by the Constitution...."   In suing a municipal government and agency under 42 U.S.C. § 1983, Plaintiff is resting his claim on the theory that the City and BCPD provided deficient training to its officers. Plaintiff needs to prove two elements to succeed in this claim.  First, he must establish the existence of a constitutional violation on the part of the police officers.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury's finding that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised); *see also Dawson v. Prince George's County*, 896 F.Supp. 537, 540 (D. Md. 1995); *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991).  Second, Plaintiff must show that any constitutional violations were proximately caused by a policy, custom, or practice of the City and BCPD.  *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691-694 (1978). Municipal policy arises from written ordinances, regulations, and statements of policy, *id*. at 690; decisions by municipal policymakers, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff's § 1983 claims are wholly dependent upon his prevailing on his constitutional claims against the individual BCPD officers.  This Court has concluded that the underlying actions of Officers McKinley and Wojcik were constitutional under applicable standards and did not violate Plaintiff's Fourth Amendment rights.   Therefore, Plaintiff cannot prove municipal government

liability on the part of the City and BCPD for the actions of the officers.   The Complaint against the City and BCPD shall be dismissed.

**V.  <u>Conclusion</u>**

      For the aforementioned reasons, Defendants McKinley and Wojcik's Cross-Motion for Summary Judgment is granted and judgment shall be entered in their favor.   Plaintiff's dispositive motion is denied.   The Complaint against Defendants City and BCPD shall be dismissed.


Date:   December 13, 2007      <u>/s/                                  </u>
                                RICHARD D. BENNETT
                                UNITED STATES DISTRICT JUDGE